SEYMOUR, Circuit Judge.
 

 Nikki Maus filed a voluntary bankruptcy petition and claimed certain real property exempt as her homestead under 11 U.S.C. § 522(b)(2)(A) (1982) and Kan.Stat.Ann. § 60-2301 (1983). She subsequently filed an application with the bankruptcy court under 11 U.S.C. § 522(f)(1) to avoid the alleged lien of her ex-husband, Jesse R. Maus, on this property. The bankruptcy court denied Nikki’s petition. She appealed
 
 *937
 
 to the district court, which concluded, contrary to the bankruptcy court, that Jesse’s claim against the homestead was an avoidable judicial lien under section 522(f)(1). Jesse appeals,
 
 [1]
 
 and we affirm the decision of the district court.
 

 I.
 

 Nikki and Jesse were divorced July 31, 1981. They had entered into a property settlement agreement which was incorporated into the divorce decree. This agreement provides in relevant part:
 

 “D. [Nikki] be, and she is hereby granted as her sole and separate property,
 
 free and clear of any and all claims of [Jesse],
 
 the following:
 

 1}! $ Sji * *
 

 That real property legally described as follows, to-wit:
 

 The South 660 feet of the East 561 feet of the Southeast Quarter (SEVi) of the Southwest Quarter (SWVi) of Section 15, Township 27 South, Range 4 West of the 6th P.M., Sedgwick County, Kansas.
 

 [[Image here]]
 

 “F. [Nikki] shall pay to [Jesse] the sum of Twenty-Two Thousand Dollars ($22,000.00) on or before the 1st day of September, 1985, subject to any credit as mentioned in paragraph E hereinabove, [resulting from Jesse’s failure to convey marketable title within thirty days], all without interest.
 

 “G. Should [Nikki] sell or convey the real property first hereinabove described prior to July 1, 1984, [Jesse] shall be entitled to receive 40% of the net proceeds of the sale of the same, after deduction and payment of the existing mortgage thereon and all reasonable costs and expenses of sale, including a realtor’s commission”.
 

 Rec., vol. I, doc. 2, at 2-3 (emphasis added).
 
 [2]
 

 Nikki subsequently refinanced the mortgage on this property and granted a second mortgage. In February 1984, the holder of the second mortgage began foreclosure proceedings. Nikki filed for bankruptcy several months later, claiming the property as homestead under section 522(b)(2)(A) and listing $22,000 as an unsecured obligation to Jesse. She subsequently applied to avoid any lien Jesse might have on the property.
 

 Nikki contended in the bankruptcy court that Jesse’s claim as a result of the $22,000 debt does not constitute a lien. She argued alternatively that if the debt is a lien against the homestead property, at most it is an avoidable judicial lien within the meaning of 11 U.S.C. § 522(f)(1). The bankruptcy court held that the debt constitutes a lien against the homestead, and that the lien was not a judicial lien but a consensual lien in the nature of a security agreement and thus not avoidable within the ambit of § 522(f)(1). The district court agreed, without citing any authority, that Jesse’s judgment against Nikki represents a lien on her homestead. Contrary to the bankruptcy court, however, the court further concluded that this lien is an avoidable judicial lien under section 522(f)(1).
 

 II.
 

 Section 522(c)(1) provides that homestead property is not liable for the debtor’s debts except for those specified in section 523(a)(5), which excepts from discharge debts “to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement_” 11 U.S.C. § 523(a)(5)
 

 
 *938
 
 (1982).
 
 [3]
 
 Significantly, property settlements are not included in the section 523(a) exceptions to discharge, and courts generally have held that unsecured debts representing property settlements
 
 are
 
 dischargeable in bankruptcy.
 
 See Brody & Brody v. Birdseye (In re Birdseye),
 
 548 F.2d 321, 322 (10th Cir.1977);
 
 see also Singer v. Singer (In re Singer),
 
 787 F.2d 1033, 1034 (6th Cir.1986);
 
 In re Coil,
 
 680 F.2d 1170, 1171 (7th Cir.1982);
 
 Albin v. Albin (In re Albin),
 
 591 F.2d 94, 96-97 (9th Cir.1979).
 

 In addition, section 522(f)(1) states that “the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this -section [homestead], if such lien is — 1) a judicial lien_” 11 U.S.C. § 522(f)(1). Section 522(f)(1) thus allows the debtor to avoid a lien if it is 1) a judicial lien, 2) on an interest of the debtor in property. A judicial lien is defined as a “lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding....” 11 U.S.C. § 101(27) (1982) (currently codified at 11 U.S.C.A. § 101(32) (West Supp. 1987)).
 

 In sum, Nikki may avoid Jesse’s claim either if it is merely a debt stemming from a property settlement rather than a lien, or if it is a judicial lien on her own property.
 

 A.
 

 Nikki argues first that no lien was created in the divorce decree. The settlement agreement, supra at 937, does not by its own terms give Jesse a lien on the property to enforce Nikki’s payment obligation. To the contrary, the agreement specifically states that Nikki is to hold the property free of any claim by Jesse. The divorce decree contains no additional language creating a lien against the homestead property. The determination of the bankruptcy court that the debt constitutes a consensual lien flies in the face of the express language of the settlement agreement which specifically states that the property is not subject to
 
 any
 
 interest of Jesse.
 

 Under Kansas law, however,
 

 “Any judgment rendered in this state on or after January 10, 1977, by a court of the United States, or any judgment rendered by a district court of this state on or after such date in an action commenced under chapter 60 of the Kansas Statutes Annotated shall be a lien on the real estate of the debtor within the county in which judgment is rendered.”
 

 Kan.Stat.Ann. § 60-2202(a) (1983).
 
 [4]
 
 Divorce proceedings in Kansas are commenced under chapter 60,
 
 see
 
 Kan.Stat. Ann. §§ 60-1601
 
 et seq.,
 
 and the record reveals that the subject property is located in the county in which the divorce was granted.
 

 Nikki argues that, notwithstanding the judgment lien statute, a judgment creditor in Kansas cannot obtain a lien on the debt- or’s homestead, citing as authority
 
 Jones v. Saint Francis Hospital,
 
 225 Kan. 649, 594 P.2d 162 (1979). However,
 
 Jones
 
 did not involve a judgment rendered in divorce proceedings. Kansas law is clear that when the divorce decree itself imposes a lien on real estate to secure a money judgment, that lien can attach to homestead property.
 
 See Bohl v. Bohl,
 
 234 Kan. 227, 670 P.2d 1344 (1983). We have found no case in which the Kansas courts have considered whether a money judgment in a divorce decree can give rise to a lien on homestead property by the operation of section 60-2202 when the decree does not specifically create a lien. Although the instant case falls into the latter uncertain category, we need not decide the issue. Even if such a lien were created, we agree with the district court that it would be a judicial lien as defined in 11 U.S.C. § 101(27).
 

 B.
 

 The bankruptcy court held that the lien it found in the divorce decree was a consen
 
 *939
 
 sual lien created by the settlement agreement and not avoidable under the Bankruptcy Act. As we have noted, however, the settlement agreement specifically states that the homestead property is granted to Nikki free and clear of all claims of Jesse. The facts here are therefore distinguishable from those cases relied on by the bankruptcy court in which the decree itself embodies an agreement to create a lien on the property to enforce the property settlement.
 
 See, e.g., In re Jackson,
 
 No. 83-20194 (Bankr.D.Kan. Aug. 30, 1983);
 
 In re Cox,
 
 No. 83-40010 (Bankr.D.Kan. Sept. 30, 1983);
 
 see also Wicks v. Wicks (In re Wicks),
 
 26 B.R. 769 (Bankr.D.Minn.1982);
 
 Dunn v. Dunn (In re Dunn),
 
 10 B.R. 385 (Bankr.W.D.Okla.1981). The case of
 
 Cowan v. Cowan (In re Scott),
 
 12 B.R. 613 (Bankr.W.D.Okla.1981), is likewise distinguishable because there the court granted a lien in the divorce decree to secure the property settlement.
 

 We thus conclude that if the decree imposes a lien at all, it is a judgment lien under Kan.Stat.Ann. § 60-2202(a). Consequently, it is a judicial lien as defined in 11 U.S.C. § 101(27).
 

 C.
 

 Assuming that a judicial lien was created in this case, the question remains whether the lien attached to the debtor’s interest in the property.
 
 See id.
 
 § 522(f)(1). Many courts have struggled to find theories under which a lien to enforce a property settlement survives bankruptcy. One theory holds that the lien does not attach to an interest of the debtor because the ex-spouse seeking to enforce the lien has a pre-existing interest in the property by virtue of the marital relationship. Under this theory, the pre-existing interest does not pass to the debtor spouse under the divorce decree, and the lien attaches to the preexisting interest of the creditor spouse rather than to any interest of the debtor spouse.
 
 See Boyd v. Robinson (In re Boyd),
 
 741 F.2d 1112 (8th Cir.1984). The problem with this convoluted theory is that, as the dissent in
 
 Boyd
 
 points out,
 
 id.
 
 at 1115, the decree gives one party title outright and that is the interest to which the lien attaches.
 

 Under Kansas law, moreover, the court in a divorce proceeding may award the marital property entirely to one party so long as the overall division is fair.
 
 See Cady v. Cady,
 
 224 Kan. 339, 581 P.2d 358 (1978);
 
 Gronquist v. Gronquist,
 
 7 Kan. App. 583, 644 P.2d 1365, 1367 (1982). Once a divorce petition is filed, “each spouse becomes the owner of a vested, but undetermined, interest in all the property individually or jointly held. The court is obligated to divide the property in a just and equitable manner, regardless of the title or origin of the property.”
 
 Cady,
 
 581 P.2d at 362-63. The court may cut off all of a spouse’s rights to property by using specific language, as was done here.
 
 See Linson v. Johnson,
 
 223 Kan. 442, 575 P.2d 504, 505 (1978). This construction of the nature of marital rights in Kansas by the Kansas courts clearly defeats the theory of a preexisting property interest which is not extinguished by the divorce decree. We therefore conclude that any lien in this case attached to an interest of the debtor within the meaning of section 522(f)(1).
 

 III.
 

 In sum, we hold that Nikki Maus may avoid Jesse’s judicial lien on her homestead under section 522(f)(1).
 
 [5]
 
 In so doing,
 
 *940
 
 we recognize that our decision may produce questionable results in some circumstances. However, we agree with the district court’s observation that the policy considerations at issue have been weighed by Congress and embodied in the language of the Bankruptcy Act. It is the prerogative of Congress and not of the courts to adjust that balance.
 

 AFFIRMED.
 

 [1]
 

 . After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.
 
 See
 
 Fed.R. App.P. 34(a); 10th Cir. R. 34.1.8. The cause is therefore ordered submitted without oral argument.
 

 [2]
 

 . The parties and the courts below apparently agreed that Nikki Maus was obligated
 
 either
 
 to pay Jesse $22,000 on or before September 1, 1985,
 
 or
 
 to pay him 40% of the net proceeds from the property if she sold it before July 1, 1984.
 

 [3]
 

 . This provision has since been modified in a fashion not relevant to this case.
 

 [4]
 

 . After the divorce decree was entered, this provision was slightly modified to eliminate language not relevant to our consideration.
 
 See
 
 Kan.Stat.Ann. § 60-2202 (1986 Cum.Supp.).
 

 [5]
 

 . We reject out of hand the bankruptcy court’s alternative ruling that Jesse’s interest was tantamount to an equitable mortgage arising from a constructive trust. Under Kansas law, "[a] constructive trust ... arises in those cases where a person by fraud, actual or constructive, or by any form of unconscionable conduct, or questionable ethics has obtained or holds title to property which in equity and good conscience he ought not to possess or which justly belongs to another.”
 
 Minich v. Kurts (In re Estate of Zimmerman),
 
 207 Kan. 354, 485 P.2d 215, 218 (1971). A constructive trust will not be imposed unless an “aroma of wrongdoing permeates the atmosphere.”
 
 Robertson v. Yeakel (In re Topeka Motor Freight, Inc.),
 
 553 F.2d 1227, 1231 (10th Cir.1977) (quoting
 
 In re Zimmerman,
 
 475 P.2d at 218). The bankruptcy court here made no fact findings to support the imposition of a constructive trust, and the record is devoid of any evidence that the requisite circumstances were present. Moreover, 11 U.S.C. § 523(a)(2)(A) specifically covers the require
 
 *940
 
 ments for declaring a debt nondischargeable on the basis of fraud. These elements are strict and must be shown by clear and convincing evidence.
 
 See Driggs v. Black (In re Black),
 
 787 F.2d 503, 505 (10th Cir.1986).